## ARTHUR BURNETT v. ROANOKE MILLS COMPANY.

(Filed 25 February, 1910.)

**1. Minors—Dangerous Machines—Presumption of Intelligence— Rebuttal—Evidence.**

There is a presumption in law that a boy over fourteen years of age, who is employed by a cotton mill company to operate a picker machine, has sufficient intelligence to perform the work, which may be rebutted by the evidence.

**2. Master and Servant—Conflicting Evidence—Dangerous Machinery—Verdict Conclusive.**

In this case there was conflicting evidence as to whether the employer had sufficiently instructed the employee over fourteen years of age as to the dangerous character of a picker machine in a cotton factory at which the latter was employed to work, and there being no error in the trial, the findings of the jury are conclusive.

**3. Master and Servant—Disobedience of Servant—Consequent Injury—Scope of Employment.**

In disobeying the orders of his superior, in attempting to unchoke a picker machine in defendant's cotton factory, a servant acts independently, and the master is not liable in damages for an injury the servant may have received while so acting.

**4. Master and Servant—Damages—Dangerous Machinery—Safe and Unsafe Methods.**

Damages are not recoverable for an injury received by an employee while improperly attempting to unchoke a picker machine in defendant's cotton factory, by removing the lid from one part of it in an unsafe manner, when the proper and safe method was in removing the lid from another part.

**5. Same—Instructions of Master.**

When there is a safe way for an employee to do his work, and he attempts, against his employer's instructions, to do it in an unsafe manner, he cannot recover; and when under proper evidence and correct instructions the jury have so found, the verdict will not be disturbed.

**6. Tales Jurors—Two Years—Disqualifications.**

The disqualification of a tales juror to serve on a jury within two years is applicable only when he has "acted" thereon within that time; and when it appears that he was summoned, but was

excused before he was sworn or served, an objection on that account is untenable. In this case it appeared that the juror had previously been summoned as a regular juror.

7. **Procedure—Rulings—Harmless Error.**

A ruling of the court upon the admissibility of evidence not seriously controverted, and which could not have prejudiced the objecting party, if erroneous, is harmless.

8. **Issues—New Trial as to One—Matter of Right.**

A party to an action can never, as a matter of right, have one of the issues found adversely to him by the jury set aside and demand a new trial as to that one, though the court may, in certain instances and in its discretion, order a partial new trial, or a new trial as to one or more of the issues.

APPEAL by plaintiff from *Guion, J.,* March Term, 1909, of Halifax.

*E. L. Travis* and *Claude Kitchin* for plaintiff.
*W. E. Daniel, George C. Green, R. C. Dunn* and *Davis & Davis* for defendant.

WALKER, J. This action was brought by the plaintiff to recover for a personal injury received by him while operating a machine known as the "picker," in the cotton mill of the defendant. The machine had two lids, which were near each other; the smaller one covered the feed rolls and the larger one the "beater." The plaintiff was hurt while raising the lid for the "beater," by being caught in the machinery. Sometimes the machine is choked with cotton, but this occurs in the feed rolls, which are covered by the smaller lid, and never in the "beater," which is covered by the larger lid. The plaintiff was fifteen years old and an intelligent and bright boy. It appears that the proper way to unchoke the machine, or to remove the cotton which retards the movement of the machinery, is to throw the belt on its side, which causes the machine, except the beater, to stop; the smaller lid can then be raised and, with the hand inserted in the feed rolls, the person in charge of the machine can easily and safely remove the accumulated cotton.

There was evidence in the case tending to show that the plaintiff had been fully instructed by the superintendent or "boss" of the mill, how to unchoke the machine; and he was also directed not to attempt to do so, but if anything occurred in the operation of the machine, to report to the "second boss," Mr. Bray. There was further evidence on the part of the defendant that the plaintiff was specially instructed not to raise the lid over the beater, as it was not necessary in order to unchoke the machine.

Evidence was introduced by the plaintiff tending to show that he had not been fully instructed as to the manner of operating the machine and of unchoking the feed rolls which obstructed or impeded its operation. ,

Much evidence was introduced by both sides as to whether proper instructions had been given to the plaintiff or not. The case was submitted to the jury under instructions from the court, *Hon. O. H. Guion* presiding, which clearly set forth the contentions of the respective parties upon the issue raised between them, as to whether the plaintiff had sufficient intelligence to operate the machine with safety to himself and had been properly instructed as to the method of unchoking the machine.

Every principle of law applicable to the case was fully and explicitly stated to the jury and the charge, as appears from the record, was one characterized by exceptional ability and learning. We have been unable, after a most careful examination of the instructions of the court, to discover any error in them.

The plaintiff complains that the court charged the jury, with reference to the capacity and intelligence of the plaintiff, that the law raises the presumption that a person over fourteen years of age is endowed with sufficient intelligence to perform the work assigned to him, but the presumption is not a conclusive one and may be rebutted by proof satisfactory to the jury that the plaintiff did not, in fact, have such intelligence or capacity. This objection is clearly answered by this Court in the case of *Baker v. R. R.,* 150 N. C., 562, in which *Mr. Justice Brown,* for the Court, stated the law with clearness and precision as follows: "An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it, and this presumption will stand until rebutted by clear proof of the absence of such discretion as is usual with infants of that age. At what age this presumption arises is not a question of fact, but one of law. The inquiry, 'At what age must an infant's responsibility for negligence be presumed to commence?' cannot be answered by referring it to a jury. That would furnish us with no rule whatever. It would simply produce a shifting standard, according to the sympathies or prejudices of those who compose each particular jury. One jury might fix the age at fourteen, and another at eighteen, and another at twenty. The responsibilities of infants are clearly defined by text-writers and courts. At common law, fourteen was the age of discretion in males and twelve in females. At fourteen, an infant could choose a guardian and contract a valid marriage. After seven, an infant may commit

a felony, although there is a presumption in his favor, which may, however, be rebutted; but, after fourteen, an infant is held to the same responsibility for crime as an adult. Inasmuch as an infant over fourteen may select a guardian, contract a marriage, is capable of harboring malice and of committing murder, it is not a great imposition on him to hold him responsible for his own acts." The learned justice, after citing numerous authorities, says: "This presumption of discreet judgment, which arises after fourteen years of age, must stand until overthrown by clear proof of absence of such natural intelligence as is usual with infants of similar age. If such evidence is offered by the plaintiff to rebut such presumption, its weight and value are for the jury to estimate." That case fully covers the objection of the plaintiff to the charge by the Court with reference to the intelligence and capacity of the plaintiff.

The other question, namely, whether the plaintiff was properly instructed as to the operation of the machine, was, as we have said, submitted to the jury with correct instructions and practically reduced the issue between the parties to one of fact, which the jury found against the plaintiff. So far as the law on this branch of the case is concerned, it is fully stated in *Patterson v. Lumber Company,* 145 N. C., 42, and the principle therein announced is specially applicable to the facts of this case. We said in *Patterson's case* that "Where the employee steps outside the line of his duty or goes beyond the scope of his employment and does something he is not required to do, he cannot recover from his master for any consequent injury, for in that particular he is not his servant, and his contract does not provide for the new risk which he thus assumes and to which he exposes himself. The result is the same where the servant, without the order or request of his employer or representative, or contrary to his orders, or at the request of another employee who has no authority from the master to make it, undertakes to do something not assigned to him. In such a case he assumes all the risk of injury. The master contracts to exercise ordinary care for the purpose of keeping his premises, his machinery, his tools and his appliances in a reasonable condition of safety for the protection of his servant employed to perform a stated service, and who is entitled to that protection while engaged in his work and so long as he continues therein and confines himself to what he is employed to do. The duty of the master to furnish safe and suitable implements and appliances, which due care for the protection of his servant would suggest, extends only to those employees who are required, permitted or expected, in the course of the employment, to make use of the instrumentalities provided by

him, or who, while in the performance of their work, may be injured by them if they are defective. Where the servant departs from the sphere of his assigned duty, the relation of master and servant is considered as temporarily suspended. The servant's position is, then, analogous to that of a trespasser, or, perhaps, of a bare licensee, and his master owes him no duty, nor is he under any legal obligation to anticipate his deviation from his instructions and the possible danger which may arise to him therefrom, and, consequently, to provide means for averting it. The servant becomes a volunteer as to the particular act which is outside the scope of his service and which he attempts to perform. He must, therefore, take things as he finds them and suffer the consequences of his own error. The master cannot be held liable therefor, as the law will not, on obvious grounds of justice, compel the master to answer in damages for any injury which the servant has brought on himself by undertaking to do that which he was not directed or required to do, and it refers his injury not to the fault of the master, but to his own unnecessary and gratuitous act. Where the servant leaves his own work to do something else for which he was not engaged, the duty of the master towards him reaches its vanishing point, as it has been said, at the moment of the transition, and his corresponding liability for a resulting injury disappears. There being no longer a contractual or legal relation imposing any duty on the master, for a breach of which he would be liable, it follows that there is nothing upon which to rest any claim for damages, because no cause of action arises from a failure to perform a mere act of humanity, or for the violation simply of a moral obligation not involving any legal duty. This principle is well established, if not elementary. It is grounded in wisdom and justice, it is perfectly fair to the master and to the servant, and, moreover, is supported by the highest authority."

The same doctrine was announced by us in *Whitson v. Wrenn*, 134 N. C., 86, in the following language: "The servant was ordered to do his work in a safe way, and he preferred to do it in another and what proved to be a dangerous way. Why should the master be liable if the servant acted in disobedience to his orders and was thereby hurt? It must be admitted that he was the author of his own injury. * * · * The plaintiff in this case has simply done something which his master virtually told him not to do. He substituted his own will for that of his employer, and his case comes within the maxim, *volenti non fit injuria*. No man by his voluntary and wrongful act can impose a liability on another, nor will he be permitted to take advantage of his own wrong and willfulness."

The jury have found in this case that there was a safe method of doing the work, and that the plaintiff, upon his own responsibility and against express instructions, attempted to do it in an unsafe way. He has, therefore, brought the injury upon himself and cannot charge the defendant with liability and damages for his own voluntary and willful act, committed in direct violation of the instructions which he had received from his employer. Numerous cases sustain the proposition which we have stated, but as they are all collated in the defendant's brief, we will not cite them in this opinion.

We find no error in the trial of the case upon its substantial merits. The jury found as a fact, under instructions from the court, which are sustained by the law, that the injury to the plaintiff was caused proximately by his own negligence, and this, of course, defeats a recovery in this action.

But the plaintiff contends that the court erred in overruling his objection to a juror, W. T. Clement, who was challenged by him for the reason that he had acted as a petit juror in the said court within two years prior to the trial of this case. The court found the facts involved in this challenge, and it appears from the findings that Clement was summoned by the sheriff, at a prior term, as a juror, and appeared in court to serve as such, but asked to be excused from service upon grounds stated to the court, and he was excused until the afternoon, when the judge discharged him for the term, upon his application previously made. He was never sworn as a juror and, of course, never sat in the trial of any case. Upon these facts, it was held by the court that he was a competent juror and the plaintiff's challenge was rejected. We think this ruling was correct. The statute requires that in order to disqualify a juror, he should have *acted* as such within two years next preceding the term of the court at which he is challenged. It is clear to us that Clement had not "acted" as a juror within two years preceding the term. The objection was made and answered in the case of *S. v. Thorne,* 81 N. C., at p. 558, where *Chief Justice Smith,* for the Court, says: "The facts do not come within the statute, and the objection is not tenable. The juror had been summoned on a special venire, and had attended a term of the court within that time, but his name was not drawn and, a jury being obtained without him, he was discharged. The disqualification attaches to the juror who 'has acted' or served as such, and not to one who has been at the court under a summons, liable only to be called on for such service. The juror was, therefore, not incompetent." To the same effect is *S. v. Whit-*

*field,* 92 N. C., 831. It further appears that Clement had been summoned, not as a tales juror, but as a regular juror for the term. Revisal, sec. 1967.

The plaintiff further objected that the court ruled out the question which he asked the witness Patterson, as to the amount of salary he was receiving from the defendant. Admitting, for the sake of argument, that this question was competent, we do not think it was sufficiently relevant to constitute error. We have carefully read the testimony of the witness, and do not find that he stated anything which was seriously controverted in the case. His testimony largely related to the construction and operation of the machine, and not to anything which bore on the material issue in the case. If there was error, it was harmless, and where it clearly appears in the case that a ruling of the court has not been prejudicial to the appellant, we will not disturb the judgment.

The other exceptions of the plaintiff are, we think, without any merit and do not require any special discussion by us.

We observe that the plaintiff moved to set aside the verdict upon the second issue, and not for a new trial generally. We held in *Nathan v. Railway Co.,* 118 N. C., 1066, that while it is competent for this Court to direct a new trial as to any one issue, leaving the verdict to stand as to others, where in the exercise of a sound discretion such a course is deemed proper, and while this course might be pursued by a judge at *nisi prius,* the party cannot, as a matter of right, move for a new trial as to only one of the issues. In that case, the Court, by *Justice Avery,* said: "The motion of counsel must be for a new trial, and while he may suggest or ask that it be partial, he cannot demand it as a right, and by his motion attempt to restrict the action of the court to one or more issues without forfeiting his right to have the refusal of the motion reviewed." We do not intend to imply that there may not be a partial new trial, or a new trial as to one or more of the issues in certain cases, either in the court below or by the order of this Court; but counsel cannot select one issue which has been answered adversely to his client and demand a new trial as to that, in the exercise of any right which the law allows him.

We have carefully examined the case and find no error in the rulings and judgment of the court.

No error.