WEST v. SOUTHERN RY. CO. et al.—100 S. W. (2d) 1004.

Eastern Section.   October 24, 1936.

492

Joe Frassrand of Chattanooga, and D. Sullins Stuart, of Cleveland, for plaintiff in error.

Mayfield & Mayfield, of Cleveland, for defendant in error.

McAMIS, J. Charles West, a boy eleven years of age, was struck and injured by one of the switch engines of the Southern Railway Company, operated by Engineer White, on February 11, 1933. Suing by next friend, he instituted this action for damages against the railway company and the engineer and has appealed in error from the action of the court in granting defendants' motion for peremptory instructions made at the close of plaintiff's proof in chief. For brevity, we will refer to the parties according to their status in the circuit court.

At the time of the accident plaintiff lived with his mother and brother near the railroad tracks, the back yard running back to a fill on the railroad right of way several feet high. On the day of his injury the ground was covered with snow. Plaintiff had constructed a sled and had been sliding down the bank back of his home. In attempting to take his sled across the track to a higher embankment on the other side, he was struck by the switch engine.

At this point are located the Knoxville main line and the Georgia main line of the defendant company running generally north and south, the Georgia main line being on the east side and running alongside and parallel to the Knoxville main line. Two side tracks branch off from the Georgia main line just back of plaintiff's home, which is on the east side of the right of way. One of these side tracks leads to the Cleveland Lumber Company located some distance south of this point. The other leads off to the north and serves the Cleveland Milling Company. The two lie somewhat in the shape of the letter K, with the main stem of the letter representing the Georgia main line. It should be stated, however, that there is some distance between the points where these two side tracks leave the main line.

There was a path along the east side of the Georgia main line running along the top of the fill and extending through the rail-

road yards, so that one walking along this path and going south would have to cross the side track leading off to the south toward the Cleveland Lumber Company. It appears that the tracks at this point are much frequented by pedestrians going along said path and also crossing from one side of the yards to the other.

Inasmuch as the action of the court in directing a verdict was based upon the testimony of plaintiff's proof in chief, it is necessary to analyze the testimony of the witnesses introduced in his behalf in so far as their testimony relates to the circumstances of his injury.

Mrs. West, mother of plaintiff, following the accident, went down to the place where plaintiff was injured. She testified that she was able to locate the point by following the drops of blood that had fallen in the snow as plaintiff was taken home following his injury, and that the drops of blood ended between the rails of the spur track leading to the Cleveland Lumber Company plant.

Bill West, a brother of plaintiff, testified that he was at home at the time his brother was injured; that he heard the engine make a sudden stop, looked out the window, and saw two employees of defendant carrying plaintiff toward his home. As plaintiff was being carried toward his home, this witness also noticed the switch engine headed north standing on the track ''right about'' where he later discovered the blood spots led to, but he was unable to state which one of the tracks it was standing on. He heard no bell rung or whistle blown.

After the doctor had been called, and about an hour after the accident, this witness went to the scene of the accident, which he was able to locate by following the drops of blood in the snow. He found the last drop of blood between the rails of the Cleveland Lumber Company side track but saw one of plaintiff's footprints between the rails of the Georgia main line.

Recalled for further examination, this witness testified that after being introduced as a witness he had again looked at the tracks and that the switch engine was standing on the Georgia main line when he looked out the window and saw it as plaintiff was being carried home. He further testified that there was no obstruction to prevent the engineer seeing up and down the tracks at that point if upon the lookout.

Introduced as a witness in his own behalf, plaintiff testified that he was pulling his sled across the railroad tracks, but does not know how far he had gotten when he was struck and injured by something. He did not know whether he was struck by the train or not.

Plaintiff next introduced one of his attorneys, Mr. Joe Frassrand, who was present and heard the testimony of the engineer, the defendant White, at a former trial of the case. The purpose of

494

Mr. Frassrand's testimony was to show an admission by White that the engine had struck plaintiff and that he testified on the former trial to facts and circumstances from which the jury might infer negligence in the operation of the engine. The court held this evidence competent as to White but excluded it as to the railway company.

Subject to this ruling, Mr. Frassrand testified that Mr. White had testified at the former trial that he was the engineer in charge of the operation of the engine; that he was backing it in a southwardly direction, the tender being in front; that he saw plaintiff playing along the track with a sled as he had gone north a short time before; that, as he was backing the engine on the return trip going south, he saw plaintiff walking along the railroad track, and saw him when he started to cross the track, but that he did not ring the bell or blow the whistle until just about the time of contact, when the front portion of the stirrup on the tender struck plaintiff.

Upon cross-examination by counsel for defendants, Mr. Frassrand stated that Mr. White had also testified that he saw plaintiff look back in the direction of the oncoming engine and presumed that he saw it and would take care of himself, but that plaintiff continued to walk toward the track on which the engine was moving and was struck by the front of the stirrup; that he (White) was asked on cross-examination whether plaintiff had gotten up to the edge of the crossties, and he stated that he did not know exactly where his feet were when he was struck, but that plaintiff walked into the tender; although, according to this witness, he stated that plaintiff was struck by the front of the stirrup. Other questions by counsel for defendants brought out rather fully the testimony of White upon the former trial as to the circumstances surrounding the injury as well as his testimony to the effect that he did all he could to stop as soon as he saw that plaintiff was about to get in front of the engine. This latter testimony tending to exonerate White from any negligence was objected to by counsel for plaintiff, but was admitted upon the theory that it was competent as a part of the testimony out of which plaintiff sought to establish an admission.

The court further held that, since counsel for the railway company had taken advantage of the favorable portions of White's tesimony upon the former trial by cross-examining the witness in reference to such favorable statements, the whole of his testimony upon the former trial as related by Mr. Frassrand had been made competent as to it as well as against the defendant White. Although counsel for the defendant railway company strenuously insisted that this evidence had not been made competent as against it, we do not find that defendant reserved exceptions to the court's ruling in this respect and, from the brief filed in this court, we do not understand that it now questions this ruling of the court.

With the foregoing evidence in the record and under the rulings of the court referred to, plaintiff rested and defendants separately moved the court for directed verdicts. Two grounds were assigned in the motion of the railway company: First, that there was no evidence that plaintiff was struck by any engine or train operated by any of its employees; and, second, that there was no evidence of any negligence upon its part or upon the part of any of its employees.

On behalf of defendant White, the sole ground of the motion was that there was no evidence of negligence upon his part.

In passing upon these motions the court stated that there was evidence, circumstantial and otherwise, that plaintiff was struck and injured by a train operated by defendants and, as we interpret his remarks, that there was evidence justifying the submission of the case to the jury upon the issue of negligence, but held that, since plaintiff had introduced the testimony of White on the former trial, he was bound by the statements attributed to White which showed that he was in the exercise of proper care and caution and was not negligent in the operation of the train and accordingly directed a verdict in favor of defendants and dismissed the suit.

We will first determine whether the court was correct in holding plaintiff bound by the statements of White upon the former trial tending to vindicate him of the charge of negligence. Before considering this question it is well to observe that the rule that a party to a lawsuit cannot impeach his own witness is not involved. White was not introduced as a witness by plaintiff, and the ruling of the court is in substance that where a party establishes an admission by his adversary he is bound by any statements made by the declarant in the same conversation favorable to himself. The fact that the statements attributed to White were made in the course of his examination as a witness, rather than in an ordinary conversation, would not be a material factor in determining the effect of statements favorable to the declarant.

That the whole testimony of a witness is admissible where, upon another trial, his adversary seeks to introduce a part of his testimony for the purpose of establishing an admission, is held in Weeks v. McNulty, 101 Tenn., 495, 508, 509, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693.

And in Craighead v. Bank, Meigs, 199, the court seems to have held that the weight of explanatory statements and their effect upon the admission is for the jury and said: "Where a man admits the justness of an account, but contends, that he has paid it, all his statements must go to the jury; yet if he can give no reason for his belief, nor show anything in support of it, the jury are not bound to believe it, and may give judgment on the admission."

We have found no reported case in Tennessee dealing

496

directly with this exact question. However, that declarations favorable to the declarant made in connection with an admission are not conclusive upon the party offering the admission and that it is for the jury to weigh both the admission and the explanatory statements favorable to the declarant is a well-established rule. The rule is stated in Jones, Commentaries on Evidence, vol. 3, p. 1962, as follows:

"A court or jury is not bound to give equal credit to all parts of a statement or admission; they may believe a part and disregard the rest. The rule only requires that what is in favor of the party making the admission should be fairly and liberally considered and weighed with the other evidence. *Of course, the one offering admissions of this character is not bound by the statements which are favorable to the declarant.* He may rebut such statements or show them to be erroneous; and it is for the court ·or jury to reject such portions of the statement, if any, as appear to be inconsistent, improbable or rebutted by other circumstances in evidence." (Italics ours.)

Many cases are cited in the footnotes in support of the text, and we are constrained to hold that the learned circuit judge was in error in holding to the contrary.

If we are correct in this holding, the only remaining question is whether the evidence, including the declarations of White both favorable and unfavorable, is such that the jury could have found defendants guilty of negligence in the operation of the engine. The circuit judge was of opinion there was evidence (other than the statements of White upon the former trial) requiring the submission of the case to the jury, and apparently he would have overruled the motions for peremptory instructions but for the fact that he held plaintiff bound by the declaration of White favorable to defendants. However, counsel for defendants insists there is no evidence from which negligence could be inferred, and this question we now consider.

In this connection the proof, when considered in the light most favorable to plaintiff, shows that the engineer saw plaintiff playing with his sled as he went north a short time before the accident and that he saw him as he approached the point of accident on the return trip. According to his testimony upon the former trial, he saw plaintiff from the time he started across the side track until he was struck and knew that he was moving in the direction of the main line upon which the engine was being operated. He says he saw plaintiff look over his shoulder in the direction of the oncoming engine and presumed that he would take care of himself, but he does not state that he was looking directly at the engine and, of course, he could not state positively that he saw it. He did state, however, that he thought at the time that

plaintiff had seen it when he looked back over his shoulder, but the fact that he looked back over his shoulder indicates that if he saw it at all it was as he walked along the path going south, for it would not have been necessary for him to look back over his shoulder after he turned to cross the side track and was going at right angles toward the main line. There is nothing to indicate that plaintiff was looking in the direction of the engine as he crossed the side track and stepped into the path of the engine. The jury might have found from the fact that plaintiff had actually gotten one foot across the east rail of the Georgia main line as indicated by the fact that one footprint was found in the snow between the rails that he had actually gotten on the track. Yet it appears from Mr. White's statement, as related by Mr. Frassrand, that he did not give any warning until the instant of contact. It is true Mr. White stated that plaintiff had not gotten on the track when he was struck, but this is in conflict with the fact that one of plaintiff's footprints was found between the rails. We do not say that this is so but, upon the face of the record before us, the jury could have found it to be so.

■ Where a person apparently in full possession of his faculties and capable of judging the danger of his position is seen approach-' ing a railroad track, the operator of a train may presume that he will observe a proper degree of care for his own safety and stop before getting upon the track. Louisville & N. Ry. Co. v. Howard, 90 Tenn., 144, 19 S. W., 116; Nashville, C. l& St. L. Ry. Co. v. Perry, 13 Tenn. 268, 269; Wallis v. Sou. P. Ry., 184 Cal. 662, 195 P. 408, 15 A. L. R., 117.

■ But as to a child of tender years, the engineer has no right, at least in the absence of a warning signal of the approach of the train, to presume that the child, even though he has seen the train, will act with the discretion of an adult in remaining in a place' of safety unless it is apparently of sufficient age and intelligence to understand the danger of its position. 52 C. J., 608, section 2161; Southern Ry. Co. v. Chatman, 124 Ga., 1026, 53 S. E., 692, 6 L. R. A. (N. S.), 283, 4 Ann. Cas., 675; Palmer v. Ry. Co., 34 Utah, 466, 98 P., 689, 16 Ann. Cas., 229.

There is, however, some disagreement as to when, with reference to the child's age the rule ceases to operate in his behalf. See notes, 52 C. J., 608.

■ ■ In this state, the rule is that children between the ages of seven and fourteen may or may not be capable of appreciating a danger and exercising proper care in reference to it, depending upon their mental development, experience, and other circumstances; but there is no presumption that a child is capable of exercising care for his own safety the same as if he were a grown person, until such child is over fourteen years of age. Manning v.

American Clothing Co., 147 Tenn., 274, 281, 282, 247 S. W., 103; Ballow v. Postal Tel. Cable Co., 12 Tenn. App., 348.

And whether a child between the ages of seven and fourteen is guilty of contributory negligence is for the jury to determine. Townsley v. Yellow Cab Co., 145 Tenn., 91, 237 S. W. 58.

By the same reasoning, under the facts of this case, we think it was for the jury to say whether, considering plaintiff's age, the engineer, after seeing him on the side track going toward the line on which the engine was being operated, exercised ordinary and reasonable care and caution for his safety. The reasoning of the Townsley Case, supra, is applicable to the facts of this case.

There is no evidence that he suddenly and without warning ran into or in front of the engine, and we concur in the holding of the circuit judge that a prima facie case of negligence was made out.

A review of the court's holding that, except for the fact that plaintiff was bound by the favorable portions of White's testimony upon the former trial, the case should have gone to the jury, is technically not before us upon this appeal, since defendants neither appealed from this holding nor assigned errors thereon in this court. State v. Willis, 130 Tenn., 403, 170 S. W., 1030; Yarbrough v. Yarbrough, 151 Tenn., 221, 269 S. W., 36; Williams v. Met. Life Ins. Co., 159 Tenn., 328, 335, 17 S. W. (2d), 923. However, since the result is the same and it is not entirely clear whether the court intended to hold that there was some evidence of negligence, we have treated this question as properly before us for determination.

For the reasons indicated the cause will be remanded for a new trial. Costs will be taxed to defendants.

Portrum and Ailor, JJ., concur.