HARRY ALAN WELCH, A MINOR, BY HIS NEXT FRIEND, M. R. JOHNSON, PLAINTIFF, v. JIM ERVIN JENKINS. AND FLAKE B. CHIPLEY, INC., DEFENDANTS.

(Filed 24 July, 1967.)

**1. Automobiles § 39—**

An instruction to the effect that plaintiff, a 14 year old boy riding a bicycle, was required to maintain a proper lookout and control of the vehicle, and to exercise the degree of care which a person of ordinary prudence would have used under the same or similar circumstances, and that if the jury should find that defendant motorist, approaching from the rear, gave appropriate warning by horn as he was attempting to pass, it was the duty of the plaintiff to give way to the right and allow defendant to pass, *held* without error.

**2. Negligence §§ 16, 28—**

A 14 year old boy is presumed capable of contributory negligence to the same extent as an adult, and this presumption obtains as a matter of law in the absence of evidence that the boy did not have the capacity, discretion and experience which would ordinarily be possessed by a boy of his age; therefore, in the absence of such evidence, the court is not required to charge the jury that a different rule should be applied in considering the question of his contributory negligence than the rule which should be applied in the case of an adult.

**3. Appeal and Error § 53—**

Where the rights of a party are determined by the answer of the jury to one issue, exceptions relating to other issues are rendered moot and need not be considered on appeal.

APPEAL by plaintiff from *Bone, E.J.,* December 1966 Civil Session of LEE.

Plaintiff, a minor 14 years of age, sues by his next friend to recover damages for personal injuries resulting from a collision between the bicycle he was riding and an automobile owned by the corporate defendant and driven by its employee, defendant Jim Ervin Jenkins.

Plaintiff alleges that defendant Jenkins, traveling east on Highway No. 43 west of Pinetops about 2:00 p.m. on 25 December 1964, overtook him as he traveled in the same direction on his bicycle; that Jenkins was operating his automobile at a high and unlawful rate of speed, without keeping a proper lookout and without having it under control; that he attempted to pass plaintiff without first giving an audible warning as required by G.S. 20-149(b); and that he failed to pass at least two feet to the left of plaintiff's bicycle. In consequence, he collided with plaintiff, seriously and permanently injuring him. Answering, defendants denied the allegations that Jenkins was negligent and the allegation that, at the time of the accident, he was acting in the scope of his employment for the cor-

porate defendant. They averred that, when Jenkins observed plaintiff and another bicyclist ahead of him on the highway, he reduced his speed, drove into the left lane and blew his horn; that as he was about to pass the bicyclists, plaintiff suddenly turned to the left, directly into the path of defendants' approaching automobile, thereby rendering a collision inevitable. Defendants pled plaintiff's contributory negligence in bar of his right to recover.

Upon the trial, plaintiff's evidence tended to show: About 2:00 p.m. on Christmas day, 1964, plaintiff and his 16-year-old stepbrother, Jimmy Harrellson, were riding their new bicycles in an easterly direction on the right side of Highway No. 43 between Jenkins Crossroads and Pinetops enroute to the home of Jimmy's grandmother. At this point, No. 43 is a 2-lane highway with pavement 20 feet wide and shoulders 5-8 feet wide. It was drizzling, and the road was a little slick, but visibility was unimpaired. Jimmy was riding on the right shoulder and plaintiff on the pavement, about a foot and a half from the right edge and 2-3 feet from Jimmy. Plaintiff was slightly behind the older boy — at the rear of his pedals. Both boys knew how to ride a bicycle. When they were about 75 yards from their destination, Jimmy looked over his shoulder and saw defendants' automobile coming over a hillcrest behind them. "It was a long straight road" — straight for several hundred yards from the bottom of the hill over which defendant Jenkins came. In Jimmy's opinion, defendants' car was traveling at "a rather high speed." Jimmy warned plaintiff that a car was approaching from the rear and told him to pull over. No other vehicle was approaching from either direction. Plaintiff was turning to the right when defendant Jenkins collided with the front of his bicycle. "There was no damage to the rear of the bicycle, but the front wheel was torn up."

Plaintiff testified that he did not know an automobile was right on top of him until it hit and that he never at any time crossed the center line of the highway. Jimmy said he did not see the impact, but he heard it and saw plaintiff going over the car and then to the ground on the left shoulder about 35-40 yards from where he was hit. Neither boy heard a horn blow. The automobile, after colliding with the bank and scraping it for a considerable distance, stopped in the left ditch about 50 yards from the point of impact. The bicycle was on the right-hand side of the road, about 45 yards from the point of impact. Its rear tire was off, lying crosswise in the road. The boys had been racing, but, according to Jimmy, they were not racing at the time of the collision.

In the collision, the bones in plaintiff's left leg were badly broken, and he sustained a concussion of the brain which rendered him unconscious for five days. Plaintiff testified that, prior to the accident,

he made "real good grades" but that now "when it comes to a test" his mind is "a blank." He no longer is able to play basketball, baseball, and football as he did before.

Defendants' evidence tended to show: At the time and place in question, as defendant Jenkins, traveling at a speed of 50-55 MPH rounded a curve and came onto a long straight stretch of highway, he saw plaintiff and Jimmy riding their bicycles 200-300 yards ahead of him. They were on the right side of the road, one a little in front of the other, and about three feet apart. Jenkins also observed a car traveling west at a slow rate of speed. This car, operated by Daniel Roundtree, stopped on its right shoulder and Jenkins slowed down 5-10 MPH and pulled out to pass the boys. One was very near the right side of the highway and the other near the centerline. When he was 50-75 feet behind them, and traveling at about 40 MPH, he blew his horn twice. When he did, plaintiff made a sudden turn to the left in front of his car. Defendant applied his brakes and pulled to the left. At the time he collided with the bicycle, his two left wheels were off the highway. Plaintiff came up on the hood of the car. His leg came through the windshield, and he then slid off the side of the car onto the left shoulder near the pavement. After the collision, the automobile hit the bank and stopped in the north ditch. The rear part of the bicycle was in the center of the road, and the front wheel was on the left side of the highway.

State Highway Patrolman Miller testified that when he arrived at the scene, he found plaintiff lying unconscious on the north shoulder about one car's length behind the Jenkins automobile. The automobile was in the north ditch, 75 feet from the point where its tracks left the pavement at a sharp angle. The car had struck the bank and scraped along it to the place where it stopped. He observed a hole in the right windshield of the automobile and that the right headlight had been damaged. He asked Jimmy Harrellson what took place, and the boy stated that he did not know what had happened; that plaintiff was behind him on the bicycle.

Defendant Jenkins testified that, at the scene, Jimmy had told his father that plaintiff had "just made the wrong turn." Jimmy denied having made that statement; he also testified that he did not remember having had any conversation with Patrolman Miller. The testimony of Daniel Roundtree tended to corroborate that of defendant Jenkins. He said, *inter alia,* that as he watched the boys coming down the hill, plaintiff "got up and was walking the pedals as fast as he could." Roundtree "thought he was going to pass his brother, but he just whipped away from him in the middle of the highway."

The jury answered the issues of negligence and contributory neg-

ligence YES. From the judgment dismissing the action, plaintiff appealed.

*Pittman, Staton & Betts for plaintiff appellant.*
*Gavin, Jackson & Gavin for defendant appellees.*

SHARP, J. After defining contributory negligence and explaining that if the negligence of both plaintiff and defendants concurred as proximate causes of plaintiff's injuries, he could not recover, the court charged the jury as follows:

> "Now it becomes necessary to consider what duty or duties the law imposed upon the plaintiff in the riding of his bicycle upon the highway. In the first place, the law requires the plaintiff to keep a reasonable and proper lookout for other vehicles on the highway, and to have reasonable and proper control of his bicycle, *which, in law, is considered a vehicle, such reasonable and proper lookout and control as a person of ordinary prudence would have had and kept under the same or similar circumstances.* The law also imposed upon the plaintiff the duty to exercise due care for his own safety, due care being that degree of care which a person of ordinary prudence would have used under the same or similar circumstances. Another duty imposed upon the plaintiff arises out of a statute which provides that the driver of a vehicle and I pause here to say that when it uses the term driver of a vehicle, that includes a person riding a bicycle:
>
> > " 'The driver of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right in favor of the overtaking vehicle on suitable and audible signal being given by the driver of the overtaking vehicle.'
>
> \*　\*　\*
>
> "(S)o that if you find from the evidence that the defendant Jenkins gave an audible and suitable signal by blowing his horn, then and in that event, it would have been the duty of the plaintiff to give way to the right and allow the defendant to pass. But if you find that no suitable or audible signal was given by the defendant before attempting to pass then that statute would not have any application. But whether that statute has application or not, it was the duty of the plaintiff, in the operation of his bicycle, to do so in a reasonable and careful manner and to make no movement of it on the road by turning from left to right which a person of ordinary prudence similarly situated would not have made."

The foregoing portion of the charge is the subject of plaintiff's assignment of error No. 17. Plaintiff also assigns as error the failure of the court to instruct the jury (1) "that a different rule should be applied in considering the question of contributory negligence in the case of the plaintiff, a 14-year-old child, from that applicable in the case of an adult"; and (2) "that the plaintiff was not chargeable with the same degree of care as an experienced adult but only required to exercise such prudence as one of his years may be expected to possess." (Assignment of error No. 23.)

In determining whether a child is contributorily negligent in any given situation, the rule in North Carolina is this: An infant under 7 years of age is conclusively presumed to be incapable of contributory negligence. *Walston v. Greene,* 247 N.C. 693, 102 S.E. 2d 124. An infant between the ages of 7 and 14 is presumed to be incapable of contributory negligence, but this presumption may be rebutted by evidence showing capacity. "The test in determining whether the child is contributorily negligent is whether it acted as a child of its age, capacity, discretion, knowledge and experience would ordinarily have acted under similar circumstances." *Adams v. Board of Education,* 248 N.C. 506, 512, 103 S.E. 2d 854, 858; *accord, Wilson v. Bright,* 255 N.C. 329, 121 S.E. 2d 601; *Hutchens v. Southard,* 254 N.C. 428, 119 S.E. 2d 205. "An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it, and this presumption will stand until rebutted by clear proof of the absence of such discretion as is usual with infants of that age." *Baker v. R. R.,* 150 N.C. 562, 564, 64 S.E. 506, 507; *accord, Burgess v. Mattox,* 260 N.C. 305, 132 S.E. 2d 577; *Tallent v. Talbert,* 249 N.C. 149, 105 S.E. 2d 426; *Van Dyke v. Atlantic Greyhound Corp.,* 218 N.C. 283, 10 S.E. 2d 727; *Moore v. Order Minor Conventuals,* 164 Fed. Supp. 711, *aff'd,* 267 F. 2d 296.

In *Baker v. R. R., supra,* plaintiff's intestate, a boy within one month of 15 years of age, who had been permitted to ride on defendant's work train, was killed when he jumped from it while it was running about 30 MPH. The jury found for plaintiff in his action for wrongful death. This Court reversed, saying:

> "He (intestate) was not an infant of tender years, and in the absence of evidence to the contrary, had the capacity of an adult to appreciate danger. * * * This presumption of discreet judgment which arises after fourteen years of age must stand until it is overthrown by clear proof of the absence of such natural intelligence as is usual with infants of similar age. If such evidence is offered by the plaintiff to rebut such presumption its weight and value are for the jury to estimate." *Id.* at 564 and 568, 64 S.E. at 507, 509.

In *Burnett v. Mills Company,* 152 N.C. 35, 67 S.E. 30, the plaintiff was 15 years old, an intelligent and bright boy, who was injured while attempting to unclog a cotton picker without stopping the machine. The plaintiff's evidence tended to show that he had not been properly instructed in the operation of the machine. The jury found that the plaintiff was injured by his own negligence. He appealed, assigning as error the court's charge "that the law raises the presumption that a person over·fourteen years of age is endowed with sufficient intelligence to perform the work assigned to him, but the presumption is not a conclusive one and may be rebutted by proof satisfactory to the jury that the plaintiff did not, in fact, have such intelligence or capacity." *Id.* at 37, 67 S.E. at 31. In affirming the judgment dismissing the action, Walker, J., said: "This objection is clearly answered by this Court in the case of *Baker v. R. R.,* 150 N.C. 562, in which Mr. Justice Brown, for the Court, stated the law with clearness and precision. . . ." *Id.* at 37, 67 S.E. at 31.

In *Rimmer v. R. R.,* 208 N.C. 198, 179 S.E. 753, the plaintiff's intestate, a girl 17 years of age, was fatally injured when she was struck by defendant's train as she ran across the track with a cloak over her head as a protection from the rain. The train, which gave no signal, was running at a high. rate of speed in violation of the city ordinance. There was no evidence tending to show intestate's experience or intellectual capacity. Without reference to plaintiff's age, in an opinion by Stacy, C.J., the Court sustained the judgment of nonsuit upon the ground of intestate's negligence.

In *Van Dyke v. Atlantic Greyhound Corp., supra,* a case closely resembling the one at bar, the plaintiff's intestate, a 14-year-old boy was killed in a bus-bicycle accident. The Court sustained a nonsuit saying, "While plaintiff's intestate was only fourteen years of age, the evidence as to his intelligence and capacity was sufficient to show that he was amenable to the ordinary rule of contributory negligence as a bar to the action." *Id.* at 286, 10 S.E. 2d at 729.

In *Burgess v. Mattox, supra* at·307, 132 S.E. 2d at 578, we said: "A seventeen-year old plaintiff is presumed to have sufficient capacity to understand and avoid a clear danger, and he is chargeable with contributory negligence as a matter of law if he fails to do so."

In this case, there was no contention and no evidence tending to show that plaintiff was lacking in the ability, capacity, or intelligence of the ordinary 14-year-old boy. On the contrary, there was evidence that before the accident he made good grades in school, played basketball, baseball, and football. Since the accident, he plays in the high school band, works part-time at a grocery, and swims. He is still able to learn and to "know it all" until he gets the test in his hands. Then his mind "is a blank." There being no attempt to

rebut the presumption of plaintiff's capacity to exercise care for his own safety, the court's charge was correct. Had he instructed the jury according to plaintiff's contentions as set out in his assignment of error No. 23, he would have nullified the presumption of capacity in the 14-year-old plaintiff. As pointed out in *Baker v. R. R., supra,* at what age the presumption of capacity arises is not a question of fact, but one of law.

> "The inquiry, At what age must an infant's responsibility for negligence be presumed to commence? can not be answered by referring it to a jury. That would furnish us with no rule whatever. It would simply produce a shifting standard, according to the sympathies or prejudices of those who composed each particular jury. One jury might fix the age at fourteen, and another at eighteen, and another at twenty." *Id.* at 565, 64 S.E. at 507-8.

In the absence of evidence to the contrary, our law fixes the age at 14. At that age there is a rebuttable presumption that he possessed the capacity of an adult to protect himself and he is, therefore, presumptively chargeable with the same standard of care for his own safety as if he were an adult. *Accord, Sheetz v. Welch,* 89 Ga. App. 749, 81 S.E. 2d 319; *Bugg v. Knowles,* 33 Ga. App. 710, 127 S.E. 813; *Brush v. Public Service Co. of Indiana,* 106 Ind. App. 554, 21 N.E. 2d 83; *Kent v. Interstate Public Service Co.,* 97 Ind. App. 13, 168 N.E. 465; *West v. Southern Ry. Co.,* 20 Tenn. App. 491, 100 S.W. 2d 1004; *Ambrose & Company v. Booth,* 301 S.W. 2d 223 (Tex. Ct. Civ. App., 1957); *Nelson v. Arrowhead Freight Lines,* 99 Utah 129, 104 P. 2d 225; *White v. Kanawha City Co.,* 127 W. Va. 566, 34 S.E. 2d 17.

It is noted that plaintiff did not allege that defendant Jenkins waited until he was immediately behind the boys to blow his horn and that a sudden blast frightened plaintiff into making a sudden turn. On the contrary, plaintiff's allegation and evidence is that no horn was sounded. *Webb v. Felton,* 266 N.C. 707, 147 S.E. 2d 219.

Plaintiff's assignment of error relating to the first issue, which was answered in his favor, and to the issues of agency and damages, which the jury did not answer, are rendered moot by plaintiff's contributory negligence. The other assignments of error disclosed

No error.