GENEVA R. ASBURY, ADMINISTRATRIX OF THE ESTATE OF GREGORY LEE WAT-
KINS, DECEASED, PLAINTIFF v. THE CITY OF RALEIGH, NORTH CAROLI-
NA, A MUNICIPAL CORPORATION; RALEIGH CITY COACH LINES, INC., A
NORTH CAROLINA CORPORATION; THE CAPITAL AREA TRANSIT SYSTEM
AND DRURY FISHER SPAIN, DEFENDANTS

No. 7910SC1158

(Filed 5 August 1980)

Automobiles §§ 85, 89.2— bicyclist striking bus – contributory negligence – no last
clear chance

In an action to recover for the death of a bicyclist in a collision with
defendant's bus, the evidence on motion for summary judgment disclosed
that decedent was contributorily negligent as a matter of law in striking
defendant's bus where it showed that decedent was 15 years old at the time
of the accident; the accident occurred on a city street which was 26 feet wide
and which had no markings indicating the lanes of travel; the bus was
traveling in a northerly direction and decedent was traveling in a southerly
direction on the street; cars were legally parked along the east curb of the
street; prior to the accident the bus moved out toward the center of the street
to pass parked cars; there was sufficient room for the bus and approaching
vehicles to pass each other while abreast of the parked cars, and the bus was
therefore within its half of the "main-traveled portion" of the roadway; as he
rode his bicycle toward the bus, decedent was looking downward so that he
could not see the bus until immediately before the accident; as the bus was
completing its movement around the parked cars, the driver saw decedent
moving toward the bus's lane of travel; and the driver sounded his horn,
applied his brakes, and swerved to the right but decedent and his bicycle
collided with the left front corner and windshield of the bus. Furthermore,
the doctrine of last clear chance did not apply because the evidence shows
that the bus driver could not have avoided the accident in the exercise of
reasonable care.

APPEAL by plaintiff from Canaday, Judge. Judgment en-
tered 12 September 1979 in Superior Court, WAKE County.
Heard in the Court of Appeals 19 May 1980.

Plaintiff, Geneva R. Asbury, is the Administratrix of the
Estate of Gregory Lee Watson who died as a result of injuries to

his head which occurred when his bicycle collided with a bus which was owned by the Capital Area Transit System operated by Raleigh City Coach Lines, Inc., and driven by Drury Fisher Spain, an employee of Raleigh City Coach Lines, Inc.

Plaintiff filed a complaint under the provisions of the North Carolina Wrongful Death Act alleging that the negligence of the defendant bus driver was the cause of the accident. Defendants answered alleging specific acts of contributory negligence on the part of plaintiff's deceased. Plaintiff replied alleging last clear chance. Depositions were taken from eyewitnesses and the investigating officer. On 27 August 1979 defendants moved for summary judgment. On 12 September 1979 the trial court entered an order and final judgment granting defendants' motion.

The witnesses to the accident include: the bus driver, Drury Fisher Spain; three passengers on the bus, Michelle Renee Reavis, Beverly Jones and Connie Francis Burke; and Dean Martin, Alma Whitfield and Lillian Leach. Other information was supplied by investigating officer Robert H. Phillips, Jr.; the investigator for the defendants, James E. Woodward; and plaintiff's private investigator, John D. Myers.

The depositions and affidavits tend to show that the accident occurred near the intersection of Grantland Drive and Sunview Drive in a residential area in Raleigh, North Carolina. Grantland Drive is 26 feet wide and runs in a north-south direction. Sunview Drive forms a "T" intersection with Grantland Drive on the east side of Grantland Drive. Grantland Drive has a downward slope for approximately a hundred yards or so prior to the intersection with Sunview Drive; and, beginning at the intersection with Sunview Drive, Grantland Drive begins a steeper incline leading to a crest of a hill approximately 175 to 200 feet on the north side of the intersection (more specific measurements are included below.) A bus stop and a bench are located on the southeast corner of the intersection and a fire hydrant is located on the northeast corner of the intersection. There are no markings on Grantland Drive which indicate lanes of travel, but the road permits traffic moving in both northerly and southerly directions. A 25 mile per hour speed limit sign is

posted on the east side of Grantland Drive at the top of the hill immediately south of the intersection with Sunview Drive. Parking is permitted on the east but not the west side of Grantland Drive.

The collision between the decedent and the city bus occurred at approximately 3:00 p.m. on 19 June 1978. At that time the weather was hot, and the visibility clear. Some cars were parked on the east side of Grantland Drive south of the bus stop.

Just prior to the accident, the city bus was proceeding northward on Grantland Drive and was moving down the hill toward the intersection with Sunview Drive. The bus moved out toward the center of the road in order to pass the parked cars. No passengers were waiting at the bus stop.

The parties agree that there is a genuine issue of material fact as to the speed of the bus immediately prior to the accident. Lillian Leach stated in her affidavit that she was standing in her living room and saw the bus pass by the front of her house 'at a high rate of speed" which she estimated to be between 35 and 40 miles per hour. The defendant driver Drury Spain told Officer Phillips shortly after the accident that the bus was going at a rate of 25 to 30 m.p.h., but in his deposition, the driver stated that he was going 20 m.p.h.

The relative timing, distances, and positions involved are discussed more fully in the opinion. However, it appears that, as the bus was at or near the intersection at the bottom of the hill, the deceased bicyclist had just ridden his bicycle over or had just mounted his bicycle on the top of the hill just north of the intersection. All eyewitnesses agree that the deceased proceeded southward down the hill and looked downward at the ground or the bike so that he could not see the approaching bus and that he kept his head down until immediately before the accident. It is also apparent that the deceased began his movement on the west side of Grantland Drive (in his right lane) and that at some point the deceased crossed over onto the east side of Grantland Drive.

As the deceased approached the top of the hill, north of the intersection, the bus was completing his movement around the parked cars at a point adjacent to or south of the intersection of Grantland and Sunview Drives. After seeing the bicyclist moving toward the bus's lane of travel, the defendant driver sounded his horn four to six times (although some witnesses do not recall hearing the horn). The driver also applied his brakes so that the bus was either stopped or moving slowly (5 to 10 m.p.h.) when the deceased and his bicycle collided with the left front corner and the windshield of the bus. One witness stated that even if the bus had stopped, the decedent would nonetheless have struck the bus. Others stated, in answering leading questions, that the bus driver had no opportunity to do anything else to avoid the accident. No witness identified any action the bus driver might have taken to avoid the accident.

The collision occurred approximately 15 or 20 feet beyond the fire hydrant. Although the driver testified that the left side of the bus was only 10 to 15 inches from the east curb at the time of the impact, measurements taken before the 8-foot-wide bus was moved indicated that the right front wheel of the bus was 5 feet 10 inches from the west curb.

In his deposition Officer Phillips stated that in his opinion the decedent's head struck the windshield. James Woodward observed hair and skin attached to the cracked glass in the windshield. Woodward's measurements indicated that the distance from the west curb of Grantland Drive to the closest portion of the bus was 12 feet 7 inches, but that the distance from the point immediately below the hair and skin in the cracked windshield to the west curb was 13 feet 9 inches.

Other necessary facts will be stated in the opinion.

*William A. Smith, Jr., for plaintiff appellant.*

*Allen, Steed and Allen, by Thomas W. Steed, Jr., and William D. Dannelly for defendant appellees.*

CLARK, Judge.

The plaintiff challenges as error the trial court's granting of defendant's motion for summary judgment.

The plaintiff first argues that there were several genuine issues of material fact as to defendant's negligence. We see no need to address each of these factual issues because the uncontradicted testimony and statements in the supporting depositions and affidavits clearly show that decedent was contributorily negligent and that decedent's contributory negligence was a concurring, if not the sole proximate cause of the accident; and, as a consequence, plaintiff is barred from recovery. *Griffin v. Ward,* 267 N.C. 296, 299, 148 S.E. 2d 133 (1966). The decedent was negligent in several respects. First, we note that in the absence of sufficient avidence to show otherwise, the decedent, being older than fourteen years of age, is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it. *Welch v. Jenkins,* 271 N.C. 138, 142, 155 S.E. 2d 763 (1967); *Baker v. Seaboard Air Line Ry.,* 150 N.C. 562, 564, 64 S.E. 506, 507, 509 (1909). Similarly, "under our motor vehicle statutes a bicycle is deemed a vehicle, and the rider of a bicycle upon the highway is subject to the applicable provisions of the statutes relating to motor vehicles." *Van Dyke v. Atlantic Greyhound Corporation,* 218 N.C. 283, 286, 10 S.E. 2d 727 (1940). Second, there is no conflict in the testimony of the eyewitnesses that the decedent had crossed over to the east side of Grantland Drive just before the accident, in which case, the decedent would also be negligent for failure to operate his bicycle upon the right half of the roadway, within the meaning of N.C. Gen. Stat. § 20-146(a).

The plaintiff, however, argues that the objective facts show otherwise, in that the decedent and the bus were both moving eastward at the time of impact and that, even when the bus stopped, part of the bus extended over the center line of the road. Were there no cars legally parked on the east side of Grantland Drive or were there markings on the pavement dividing lanes of travel, this argument might have merit, but where there is room both for the bus and the approaching vehicles to pass each other while abreast the parked car, it is clear that though the bus was not technically within the center of the road, it was nonetheless within its half of the "main-

traveled portion of the roadway" within the meaning of N.C. Gen. Stat. § 20-148. We note that if there were no room for the bus and another oncoming vehicle to pass each other when abreast of the parked car, it would have been the duty of the bus driver to have yielded to the oncoming vehicle, N.C. Gen. Stat. § 20-146(a)(2). Such was not true here, for even if the parked car were as wide as the city bus herein (8 feet), there still would have been two nine-foot-wide lanes in which both the bicycle and the bus could travel. The undisputed facts therefore indicate that decedent drove his bicycle over four feet into the bus's half of the "main-traveled portion" of the roadway at the time of the impact.

For this same reason there is also no merit in plaintiff's contention that the bus driver was negligent and proximately caused the accident because the driver did not slow down or stop when, after he saw the decedent in decedent's right lane at the top of the hill, the driver nonetheless proceeded around the parked car without slowing down. At this point in time there was no indication that decedent was moving eastward, and it was entirely reasonable for the bus driver to assume that the decedent would remain within his half of the main-traveled portion of the road. Similarly, the activity of passing the parked vehicle cannot be deemed to be an act of original negligence on the part of the bus driver which in turn created the decedent's perilous condition.

We now turn to plaintiff's argument that defendants are nonetheless liable under the doctrine of last clear chance. The doctrine "is not a single rule, but is a series of different rules applicable to differing factual situations." *Exum v. Boyles,* 272 N.C. 567, 575, 158 S.E. 2d 845, 852 (1968). We note that this case is not one in which the peril of plaintiff's decedent was created by the defendant, therefore, application of the rule of Section 480, of the Restatement of the Law of Torts, Negligence, would not apply. *Exum, supra.* Based on our discussion above, there are no facts which would tend to indicate any "original negligence" on the part of the defendant driver which created decedent's peril; rather, the evidence without conflict suggests that the decedent's peril was created by his own inattention and his own act of directing his bicycle into the path of the bus. Therefore,

we choose to apply the rule of § 479 of the Restatement of the Law, Torts, Negligence, quoted in *Exum, supra,* which entitles "plaintiff who has negligently subjected himself to a risk of harm from defendant's *subsequent* negligence" to recover if, immediately preceding the harm:

"(a) *the plaintiff is unable to avoid it* by the exercise of reasonable vigilance and care, and

(b) the defendant

   (i) *knows* of the plaintiff's situation and *realizes* the helpless peril involved therein; or

   (ii) knows of the plaintiff's situation and *has reason to realize* the peril involved therein; or

   (iii) *would have discovered* the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril *had he exercised the vigilance which it was his duty to the plaintiff to exercise,* and

(c) *thereafter* is negligent in failing to utilize with reasonable care and competence *his then existing ability to avoid harming the plaintiff.*" *(Emphasis added in Exum, supra.)*

272 N.C. at 574-75, 158 S.E. 2d at 852. The gist of the rule is "peril and discovery of such peril in time to avoid injury." *Exum, supra.* We see no material issue of the facts that: (1) decedent's peril was not apparent in time for the defendant to avoid the accident, and (2) that the defendant driver acted prudently to avoid the accident.

Plaintiff argues that the driver saw the decedent before the driver began to pull out around the parked car, at a point 246 feet from the point of impact, and, citing *Champion v. Waller,* 268 N.C. 426, 150 S.E. 2d 783 (1966), that the mere fact that the decedent was on a bicycle, placed the driver on notice of a dangerous situation. We do not agree. First, as we have ex-

plained, unlike the 13-year-old child in *Champion,* the decedent was almost 16 years of age and is presumed to be able to perceive danger and to act to avoid it. Second, at this point in time the driver saw the decedent in the middle of the west lane of travel and there was no indication that he was in any position of peril. No other person saw the bicyclist at this point in time. Plaintiff argues that Beverly Jones saw the decedent at the top of the hill "on our side" but her statement refers to a point in time when the bus was "going up" the hill, as opposed to when the bus was going down the preceding hill on the south side of the intersection and was in the act of passing the parked car.

The driver's testimony indicates that it was only after the bus had passed the parked car that it became apparent that the decedent, with his head down, was moving over to the bus's lane of travel. A this point the driver was 172 feet from the point of impact. At this point the decedent was still not in peril and could, by the exercise of reasonable vigilance, have extricated himself from possible danger. Nonetheless, the driver immediately began to apply the brakes.

The decedent continued in his lane of travel and began to cross over into the bus's lane of travel. At this point the decedent had entered a position of peril, although it is still apparent that the decedent, by the exercise of reasonable vigilance, could have turned his wheel to avoid moving toward the bus. However, even assuming that the decedent was in peril and could not extricate himself, the driver nonetheless acted promptly to avert an accident by continuing to apply his brakes, swerving to the right, and blowing his horn several times. There is no testimony which indicates that the accident could have been avoided by the mere flick of a wrist as the plaintiff suggests. On the contrary, given the speed and trajectory of the bicycle, and the relative size of the bus, it would have been difficult, if not impossible, for the bus to have avoided the collision. The plaintiff is required to offer evidence beyond speculation that the bus driver had a "clear" chance, as opposed to a mere possible chance to avoid the accident. Here, however, every eyewitness testified to the effect that the driver did all he could do. *See, e.g., Van Dyke v. Atlantic Greyhound Corporation, supra.* There is no material contradiction in any of this testimony.

Affirmed.

Chief Judge MORRIS and Judge ERWIN concur.